[Crim. No. 6598.   Second Dist., Div. Three.   Oct. 21, 1959.]

THE PEOPLE, Respondent, v. FLOYD McKINLEY GANN, Appellant.

A. P. Coviello for Appellant.

Stanley Mosk, Attorney General, and John M. Huntington, Deputy Attorney General, for Respondent.

WOOD (Parker), J. — Defendant was charged, in four counts, with forgery, and in one count with burglary. He admitted allegations of the information that he had been convicted twice previously of felonies (larceny of automobile, and forgery). In a jury trial he was convicted on the five counts. He appeals from the judgment and the order denying his motion for a new trial.

Appellant contends that the evidence was not sufficient to support the verdicts; and that there was misconduct of the deputy district attorney.

Each of the four forged checks herein was written on a form of check bearing the printed name "Glendale Mattress Company" as the name of the company for which the check was drawn. Under that name, on each check, appeared the name "Robert James," in handwriting, as the name of the person who drew the check for the company. Each check had a printed number on it, designating the number of the check. Each check was payable to Tony Fontana.

The check, involved in count 1, was dated February 21, 1958, and was for $76.24. Mr. Groomes, a clerk at a food market, testified that appellant presented that check to him, at the market, about February 21, 1958; the witness marked the check "O. K." in the upper left corner; appellant cashed the check at the market; the witness did not remember whether he saw the endorsement "Tony Fontana" placed on the back of the check; the check was dishonored by the bank.

The check, involved in count 2, was dated February 22, 1958, and was for $76.24. Mr. DeGrasia, the owner of a grocery store, testified that appellant presented that check to him, at the market, on February 22, 1958, and he gave appellant cash for the check; the witness asked appellant for his driver's license, and appellant showed a driver's license; the witness wrote the license number, Y346905, on the back of the check; he (witness) did not remember whether the endorsement "Tony Fontana" was written in his presence; the check was dishonored by the bank.

The check, involved in count 3, was dated March 6, 1958, and was for $74.50. Mr. Zlotnik, the owner of a food market, testified that the check was presented to him on or about the date it bears, but he did not recognize (at the trial) the person who presented the check; he saw that person (who presented the check) write the endorsement ''Tony Fontana'' on the back of the check; for identification, the person presented his driver's license, and the witness wrote the license number, Y346905, on the check; the witness gave the person groceries and cash for the check; the check was dishonored by the bank.

The check, involved in count 4, was dated March 6, 1958, and was for $49. Mr. Tanous, the owner of a food market, testified that the check was presented to him on or about the date it bears, but he did not recognize (at the trial) the person who presented it; the endorsement ''Tony Fontana'' was on the check when it was presented; for identification, the person who presented the check showed a driver's license, but the witness did not write the license number on the check; the witness gave the person meat and money for the check; the check was dishonored by the bank.

The appellant was an employee of the Glendale Mattress Company for approximately eight months preceding January 24, 1958, on which date he terminated that employment. Appellant had a key to the premises, but he did not deliver the key to the owner (Mr. James) when he left the employment. The key was returned to the seamstress (at the company) two or three weeks after appellant left.

Mr. Robert A. James, the owner of the mattress company, used the company checkbook on Friday, February 21, 1958, in writing the payroll checks . He locked the premises about 6 p. m. on that day. He was at the premises the next day, but he did not use the checkbook. When he left there at noon on that Saturday he locked the premises. He returned there on Monday, February 24, but he did not look for the checkbook on that day. On the next day he found that the company checkbook and the checkwriter were missing. Mr. James did not give anyone permission to enter his premises and remove the checkbook or checkwriter. The checks, which were involved in the four forgery counts, were checks that were written on check forms that had been in the company checkbook. The printed numbers on those checks were numbers of blank checks (or check forms) which had been in the checkbook. No check, from that checkbook, was issued by the company after February 21, 1958. The name ''Robert James,''

appearing on the four checks involved in the forgery counts, was not written by Robert A. James, the owner of said company.

Mr. Dronek, an employee of the mattress company, testified that about December, 1957, while he and appellant were employed there, he (witness) found a wallet in a davenport at the mattress company; the davenport had been sent there to be sterilized; in the wallet there were some identification papers, including a driver's license and two union cards; one of the cards was a painters union card; the "first" name on the driver's license was "Tony"; the witness handed the wallet and its contents to appellant and asked him to mail it to the owner; appellant said he would do that.

Mr. Tony Fontana testified that he had never worked for the mattress company; none of the endorsements on said four checks (involved in the forgery counts) was his endorsement, and he did not give any persons permission to sign the name "Tony Fontana" on those checks; about September, 1956, he lost his driver's license, Social Security card, two union cards (one of them from the painters union), and about $30; the number of his driver's license was Y346905.

It was established by the testimony of Officer Koskie, in relating conversations which he had with appellant, that the handwriting on Exhibits 5, 6, 7, and 8, with certain specified exceptions, was the handwriting of appellant. Those exhibits included: various receipts, sales slips, and "job memos" (which were records of the mattress company) that were made while appellant was employed there. Those exhibits also included: two checks which were payable to appellant and were endorsed "Floyd M. Gann"; two cards written by appellant, in the presence of Officer Koskie, at the Glendale Police Department; a card written by appellant at the Los Angeles Police Department. The handwriting on those exhibits (excluding the specified exceptions as to writing thereon which was not appellant's handwriting) will be referred to herein as exemplars of appellant's handwriting.

Officer Sloan testified that he had been employed by the Los Angeles Police Department as an examiner of questioned documents for approximately 11 years; he had testified regarding questioned documents in state and federal trial courts, and in military proceedings, more than 900 times. He was qualified to give an opinion as an expert regarding handwriting. He testified that he compared the handwriting on Exhibits 1, 2, 3, and 4 (the checks involved in the four forgery

counts) with the exemplars of appellant's handwriting on Exhibits 5, 6, 7, and 8; in his opinion the name "Robert James," appearing as the maker of the four checks (Exhibits 1, 2, 3, and 4), and the name "Tony Fontana," appearing as the endorsement by the payee of those checks, were written by the same person who wrote the portions of Exhibits 5, 6, 7, and 8, which are referred to as exemplars of appellant's handwriting.

Appellant testified that he quit working for the mattress company about January 24, 1958; thereafter he worked for a bedding company about three weeks and then he decided to take a vacation; he bought a 1958 Ford automobile about February 15, 1958; he had a trailer and a boat; he fastened them to the Ford and took them to Oklahoma City where he formerly lived; he left his home in Los Angeles on February 18, about 8 p. m., and went to El Monte where he visited his sister until 2 a. m. on February 19, when he proceeded on his trip to Oklahoma; while he was in Oklahoma a finance company repossessed the trailer and boat and sold them; he returned to Los Angeles on April 5, 1958; Mr. Dronek, an employee of the mattress company, did not hand him a wallet at any time; on January 27 (on Monday after the Friday when he quit work at the mattress company) he returned the key to the seamstress at the company; the first time he saw the four checks (Exhibits 1, 2, 3, and 4) was at the Glendale police station on May 20; he did not sign the name "Robert James" on any of the checks and he did not know who signed that name. He also testified on direct examination, that in 1949 he pleaded guilty, in Oklahoma, to forgery of a check and he served a term in the penitentiary.

Appellant's wife testified that he took the trailer and boat from Los Angeles around the 19th or 20th of February; he went to visit his sister in Oklahoma City; on March 1, while he was in Oklahoma, she talked to him by telephone.

Mr. Olney, a neighbor of appellant, testified that he did not see appellant around appellant's home for some little time after February 20, 1958. Mrs. Olney testified that she did not see appellant during the time from February 19 to April 1, 1958.

The trailer and boat were repossessed in Oklahoma on March 6, 1958, by a Glendale (California) finance company, and they were sold in Oklahoma on April 8, 1958.

Appellant was arrested at his home in Los Angeles on May 20, 1958.

With respect to the alleged insufficiency of the evidence on the forgery counts, appellant argues in effect, as follows: As to count 1, the grocery clerk could not testify, of his own knowledge, that appellant received anything of value for the check. As to count 2, the owner of the store was discredited in that at the preliminary examination the witness said that it seemed to him that appellant was the "fellow" who presented the check; whereas, at the trial the witness identified appellant as the one who presented the check. As to counts 3 and 4, the owners of the markets did not identify appellant as the one who presented the checks, and it was uncontradicted that appellant left Los Angeles on February 19 before the crimes were committed.

As to count 1, it is true that the grocery clerk did not testify that he saw appellant receive something for the check, but there was evidence that the owner marked the check "O. K." and it was delivered to the cashier and was deposited in the bank. The owner identified appellant as the one who presented the check. It was immaterial whether appellant received anything of value for the check. It could be inferred that the check was presented with intent to deceive and defraud the store owner.

As to count 2, the credibility of the owner as to the identity of the appellant was a question of fact for the trial judge.

As to counts 3 and 4, it is true that the owners did not identify appellant, but it is not true that it was uncontradicted that appellant left Los Angeles on February 19 before the crimes were committed. There was evidence that one owner identified appellant as the one who presented a check on February 21, and another owner identified him and stated with certainty that the check was presented by appellant on Washington's Birthday, February 22. In any event the trial judge was not required to accept appellant's testimony that he was away from Los Angeles from February 19 to April 5.

As to counts 1, 2, 3, and 4, the evidence was sufficient to prove that the four checks were forged by appellant. The effect of the testimony of the handwriting expert was that appellant wrote the names "Robert James" and "Tony Fontana" on the checks. There was evidence that Tony Fontana's lost wallet, containing his driver's license, was delivered to appellant by a coemployee at the mattress company. There

was evidence that that lost license was offered as identification of the one who presented two of the checks.

With respect to the alleged insufficiency of the evidence on the burglary count (count 5), appellant argues that no witness said that appellant entered the premises of the mattress company and stole the checkbook or the checkwriter; that the conviction of burglary was based upon conjecture and prejudice; that the undisputed testimony of appellant was that he left Los Angeles on February 19, which was before the alleged date of the burglary, February 23. According to the testimony of the owner of the mattress company, the checkbook and checkwriter were taken from the premises some time during the period from Friday, February 21 (when he last wrote checks), and Tuesday, February 25 (when he found that those things were missing). The evidence shows that a burglary was committed; that the checkbook was a part of the property stolen in the burglary; that soon after the burglary appellant was in possession of blank forms of checks which had been a part of the stolen checkbook. An inference of guilt may be drawn from possession of the stolen property. Circumstances corroborative of such an inference are: that appellant was familiar with the burglarized premises and he had not returned the key until after the time the burglary was committed; that the wallet of Tony Fontana, containing his driver's license, had been delivered to appellant, and he had exhibited the driver's license as false identification in using some of the stolen check forms to deceive and defraud the store owners. The evidence was sufficient to support the verdict, as to count 5, finding appellant guilty of burglary in the second degree.

Appellant also contends that the deputy district attorney was guilty of prejudicial misconduct in that, on cross-examination of appellant, the deputy asked a question implying that appellant's brother-in-law and sister-in-law had been codefendants (in Oklahoma) with appellant. The question is included in the following excerpt from the reporter's transcript: "Q William and Erma Ellen were living back there at that time, were they not? A It's possible that they was. Q You know they were, don't you? A Well, I don't know whether they was or not at this particular time. Q As a matter of fact, they were co-defendants with you, weren't they? A No, sir." On direct examination, appellant has testified that he had been convicted of forgery in Oklahoma; and, in

connection with that testimony, he related circumstances involved in issuing and passing the forged check. In view of that testimony on direct examination, the circumstances of appellant's conviction in Oklahoma were a proper subject for cross-examination. The question, however, as to whether the relatives were codefendants should not have been asked. ■ No objection to the question was made, and there was no assignment of misconduct in asking the question. It cannot be said that asking the question constituted prejudicial misconduct.

The evidence was sufficient to support the verdicts.

The judgment and the order denying the motion for a new trial are affirmed.

Shinn, P. J., concurred.